# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS GOOLSBY,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>　　　　　　　Defendants. | Case No.: 3:17-cv-00564-WQH-NLS<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the Motion for Summary Judgment filed by Defendant County of San Diego (ECF No. 137); the Report and Recommendation issued by the Magistrate Judge (ECF No. 154); the Objection filed by Plaintiff Thomas Goolsby (ECF No. 157); the Objection filed by Defendant (ECF No. 158); the Supplemental Objection filed by Plaintiff (ECF No. 162); and the Renewed Ex Parte Motion for a Copy filed by Plaintiff (ECF No. 160).

The duties of the district court in connection with a report and recommendation of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district judge must "make a de novo determination of those portions of the report … to which objection is made," and "may accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b). The district court need not review de novo those portions of a Report and Recommendation to which neither party objects. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("Neither the Constitution nor the [Federal Magistrates Act] requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct.").

On March 12, 2020, Plaintiff filed an Objection to the Report and Recommendation. (ECF No. 157). On March 17, 2020, Defendant filed an Objection to the Report and Recommendation. (ECF No. 158). On March 24, 2020, Plaintiff filed a Renewed Ex Parte Motion for a Copy. (ECF No. 160). On March 24, 2020, Plaintiff filed a Supplemental Objection to the Report and Recommendation. (ECF No. 162).[1] On March 26, 2020, Defendant filed a Reply. (ECF No. 163). On March 30, 2020, Plaintiff filed a Reply. (ECF No. 164).

Neither party has objected to the procedural background section of the Report and Recommendation. The Court adopts lines 23 to 28 of page 1 and lines 1 to 20 of page 2 of the Report and Recommendation. (ECF No. 154). Neither party has objected to the factual background section of the Report and Recommendation. The Court adopts lines 21 to 26 of page 1, the entirety of page 3, and the entirety of page 4 of the Report and Recommendation. *Id*. Neither party has objected to the legal standard section of the Report and Recommendation. The Court adopts the entirety of page 5 and lines 1 to 3 of page 6 of the Report and Recommendation. *Id*.

---

[1] Plaintiff objects to the Report and Recommendation because Defendant failed to include a separate statement of undisputed material facts to its Motion for Summary Judgment pursuant to Chamber Rules.

## DISCUSSION

**A. Due Process Regarding Placement in Administrative Segregation**

Plaintiff objects to the Report and Recommendation because the Court has overlooked the fact that Plaintiff's due process claim pertains to his initial and continued placement in segregation, rather than just Plaintiff's initial placement. Defendant objects to the Report and Recommendation because Plaintiff received the requisite due process protections prior to placement in administrative segregation. Defendant asserts that the evidence in the record shows that Plaintiff conversed with deputies, presented his views to them, and submitted two grievances regarding his housing assignment in administrative segregation. Defendant contends that the location of Plaintiff's interview and the fact that Plaintiff was changing clothes during the interview are not material facts. Defendant contends that Plaintiff's municipal liability claim fails as a matter of law because there is no genuine dispute of material fact as to Defendant's underlying claims regarding administrative segregation.

The Fourteenth Amended provides, "[n]o State shall … deprive any person of life, liberty, or property, without due process of law …." U.S. Const. amend. XIV, §1. Prisoners who wish to invoke due process protections must establish the existence of a protected interest and show it was denied without due process. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The Constitution itself does not confer on inmates "a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citation omitted).

"Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (citations omitted). However, state regulations may create a liberty interest where the nature of the confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U.S. at 210 (quoting *Sandin*, 515 U.S. at 483). In such cases where a liberty interest does exist, due process requires that

> Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views.

*Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986). Due process does not require "detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id.* at 1100-01 (citations omitted). Additionally, prison officials must have "some evidence" to support their decision to place an inmate in segregation for administrative reasons. *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) (citing *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)).

Assuming without deciding that there is a liberty interest, Defendant bears the initial burden of establishing the absence of a genuine issue of material fact as to whether due process protection was satisfied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Plaintiff states in a sworn declaration that

> After more than five hours of waiting, sometimes after 6:00pm shift change, I was escorted upstairs to the second floor. I was taken to a room and strip searched. I was given green colored jail clothing to dress in. As I was dressing two deputies came in, one asked me where I was coming from? I told him Kern Valley State Prison. He then asked me if I was slammed in the State? I told him no, that I was on the general population yard and had CDCR records with me to prove it. I told him I have been in the past for a bogus gang validation and rule violations and was slammed in County custody in 2008 because of it. But Sgt. Rose told me if I could prove I was on the mainline in CDCR I can be on the mainline here. The deputy told me as long as that was true I would be going to the mainline here, but he needed to talk to his supervisor who makes housing decisions, he can only make recommendations. The other deputy took pictures of my tattoos and they both left. Plaintiff never seen either one after that.

Pl.'s Decl. ¶ 6, ECF No. 147 at 48. Deputy Frankie Leon states in a sworn declaration that

> During the classification interview, I asked Plaintiff why he was outfitted in jail issued green clothing. Green clothing and a green wristband is used to denote prisoners identified during the intake process that are assaultive or have had previous escape attempts. The intake process occurs prior to determining where Plaintiff should be housed in jail. Plaintiff confirmed that he had an escape attempt in 2005. I then asked why he was previously housed in the Ad-Seg Unit while in San Diego County custody. He confirmed that this was because he was previously housed in the SHU in state prison. He further explained that he served his SHU term in state prison, but was placed back in the SHU because that he was validated as a Nazi Low Rider and Aryan Brotherhood member in 2011 by an Institutional Gang Investigator while in Tehachapi State Prison. He stated that he was presently housed in the general population unit in Kern Valley….
>
> At the ends of the interview, I confirmed that Plaintiff would remain in green clothing and informed him he would be housed Ad-Seg due to his open admittance to being a member of a prison gang. Plaintiff was subsequently given a green wristband with an orange stripe insert. The orange stripe insert denoted that he would be housed in Ad-Seg.
>
> After the classification interview, a field interview was then conducted by Deputy Mike Campos due to Plaintiff's assertion he was a validated prison gang member. During this interview several photos were taken of Plaintiff's tattoos….

Leon Decl. ¶¶ 9-11, ECF No. 137-5 at 3 (internal citations omitted).

The evidence in the record shows that Defendant held "an informal nonadversary hearing" in which Plaintiff was permitted "to present his views" prior to Plaintiff's placement in administrative segregation. *Toussaint*, 801 F.2d at 1100. Defendant is not required to provide Plaintiff with "detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id*. at 1100-01. The Court concludes that Defendant has carried its burden by establishing "that there is no genuine dispute as to any material fact …." *Celotex*, 477 U.S. at 322.

The burden shifts to Plaintiff to identify "specific facts showing that there is a genuine issue for trial" as to whether due process protection was satisfied. *Id*. at 324

(quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted). In his declaration, Plaintiff states that the hearing occurred as Plaintiff was "dressing" after being strip searched. Pl.'s Decl. ¶ 6, ECF No. 147 at 48. The location of hearing and the fact that Plaintiff was changing clothes during the hearing do not create a genuine dispute of material fact regarding whether or not Plaintiff received a hearing with the opportunity to be heard. The Court concludes that Plaintiff has failed to carry his burden to identify "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted). The Court grants summary judgment in favor of Defendant and against Plaintiff on Plaintiff's due process claim regarding Plaintiff's administrative segregation.

**B. Exhaustion of Administrative Remedies Regarding Outdoor Exercise**

When a defendant seeks summary judgment based on a plaintiff's failure to exhaust, the "defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014)).

> Then, the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."

*Id*. (quoting *Albino*, 747 F.3d at 1172). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166.

The Prisoner Litigation Reform Act ("PLRA") states, in relevant part,

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Jones v. Bock*, 549 U.S. 199, 204 (2007) (quoting 42 U.S.C. § 1997e(a)) (alteration in original). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id*. at 211 (citation omitted). The "failure to exhaust is an affirmative defense under the PLRA …." *Id*. at 216. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' …-rules that are defined not by the PLRA, but by the prison grievance process itself." *Id*. at 218 (internal citation omitted). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1171).

### i. Recreation Yard Claims at George Bailey Detention Facility

Plaintiff objects to the Report and Recommendation because administrative remedies were unavailable at George Bailey Detention Facility ("GBDF"). Plaintiff asserts that no administrative remedies were available because Plaintiff has previously filed inmate grievances at GBDF and received no response.

Plaintiff was housed at GBDF between February 7, 2017 and February 27, 2017 and between April 20, 2017 and May 17, 2017. Mendoza Decl. ¶ 6, ECF No. 137-6 at 2. In his deposition, Plaintiff stated that he "filed several grievances" regarding "all kinds of things" and "a lot of different issues." Ex. A to Def.'s Notice of Lodgment, ECF No. 137-2 at 22. For example, Plaintiff stated that he filed a "grievance on February 7th concerning … placement in solitary confinement" at GBDF. *Id*. Plaintiff was asked whether he filed any grievances regarding access to the GBDF recreation yard between February 7, 2017 and February 22, 2017. *See id*. at 28-29. Plaintiff responded: "[d]uring that period, no, I don't believe so." *Id*. at 29. Plaintiff was asked whether he filed any grievances regarding access to the GBDF recreation yard between February 22, 2017 and February 27, 2017 and between April 20, 2017 and May 17, 2017. *See id*. at 44. Plaintiff responded: "I don't believe so, no." *Id*.

The evidence in the record shows that "there was an available administrative remedy" because Plaintiff has previously "filed several grievances" including "on February

7

3:17-cv-00564-WQH-NLS

7th concerning … placement in solitary confinement" at GBDF. *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172); Ex. A to Def.'s Notice of Lodgment, ECF No. 137-2 at 22. The evidence in the record shows that Plaintiff "did not exhaust that available remedy" because Plaintiff failed to file any grievances regarding access to the recreation yard at GBDF. *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172). The Court concludes that Defendant has carried its burden by "prov[ing] that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Id*. (quoting *Albino*, 747 F.3d at 1172).

> The burden shifts to Plaintiff to show
>
> that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."

*Id*. (quoting *Albino*, 747 F.3d at 1172). When asked why he did not file a grievance between February 7, 2017 and February 22, 2017 at GBDF, Plaintiff responded:

> It was just I had a lot of -- I just filed a grievance about being placed in segregation about due process that didn't get responded to. I was kind of depressed. I was kind of bummed out….

Ex. A to Def.'s Notice of Lodgment, ECF No. 137-2 at 29. When asked why he did not file a grievance between February 22, 2017 and February 27, 2017 and between April 20, 2017 and May 17, 2017 at GBDF, Plaintiff responded:

> Because they weren't -- the officers were not following the grievance procedures and responding to my grievances so I felt it was pointless and I had no available -- administrative remedies available.

*Id*. at 44. The evidence in the record fails to show that "that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172). The Court concludes that Plaintiff has failed to carry his burden to show "that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable

to him." *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172); *see e.g.*, *Wolf v. Otter*, No. 1:12-cv-00526-BLW, 2014 WL 2504542, at *5 (D. Idaho June 3, 2014), aff'd sub nom. *Wolf v. Idaho State Bd. of Corr.*, 772 F. App'x 557 (9th Cir. 2019) ("[T]he allegation that some grievances filed by other inmates were not answered does not give rise to an inference that Plaintiff Kruger exhausted all available remedies with respect to his claims in this action."). Defendant "is entitled to summary judgment under Rule 56" because the "undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust" administrative remedies regarding access to the GBDF recreation yard. *Albino*, 747 F.3d at 1166.

### ii. Recreation Yard Claims at San Diego Central Jail

Plaintiff was housed at San Diego Central Jail ("SDCJ") between December 13, 2016 and February 7, 2017 and between February 27, 2017 to April 20, 2017. Mendoza Decl. ¶ 6, ECF No. 137-6 at 2. In his deposition, Plaintiff stated the following regarding access to the SDCJ recreation yard:

> Q. Okay. Did you ever file any grievances regarding your access to the rec yard?
> A. [Plaintiff:] Yes.
> Q. And when did you file that grievance?
> A. March 6, 2017.
> Q. So you were in 4-E [at San Diego Central Jail] at that time?
> A. Yeah.
> Q. And what did the grievance say?
> A. I was requesting to go to out-of-cell exercise, it was not being provided to me and I was requesting why I was being denied out-of-cell exercise.
> …
> Q. Did you ever receive a response?
> A. Never.
> …
> Q. So you -- March 6th you gave M.R. Meza a grievance regarding out-of-cell exercise?
> A. Right.
> Q. And you did not receive a response, correct?
> A. Uhn-uhn. No
> Q. After you didn't receive a response what did you do?

> A. It was probably a week or so.
> Q. Okay.
> A. And I filed -- I sent a letter to the Sheriff.
> Q. Okay. But did you file a second grievance?
> A. No ....
> ...
> Q. And the grievance to M.R. Meza, did it -- was alleging that you never received any rec yard or was it focused on specifically dates?
> A. [Plaintiff:] I believe it was specific dates. I have to double check. I haven't -- I haven't looked at it in a while, but I believe it was since -- I think it's February 7, that's usually the date because once I left 7-E [at San Diego Central Jail], I didn't -- because that was before I went back. So I believe -- yeah, since 7-E [at San Diego Central Jail] that I haven't received any out-of cell- exercise. I believe I put that on there.
> Q. Did you file any subsequent grievances while you were in -- regarding out-of-cell exercise while you were in 6-E or 5-E [at San Diego Central Jail] or George Bailey 5-A [between February 22, 2017 and February 27, 2017 and between April 20, 2017 and May 17, 2017]?
> A. I don't believe so, no.

Ex. A to Def.'s Notice of Lodgment, ECF No. 137-2 at 39-41, 43-44. Between February 7, 2017 and February 27, 2017, Plaintiff was housed at GBDF. Mendoza Decl. ¶ 6, ECF No. 137-6 at 2. On February 27, 2017, Plaintiff entered SDCJ. *Id.* On March 6, 2017, Plaintiff filed his grievance. Ex. A to Def.'s Notice of Lodgment, ECF No. 137-2 at 39. On April 20, 2017, Plaintiff left SDCJ and returned to GBDF. Mendoza Decl. ¶ 6, ECF No. 137-6 at 2. The Court concludes that Plaintiff's grievance covers the time period between February 27, 2017 (when Plaintiff entered SDCJ) and March 6, 2017 (when Plaintiff filed his grievance) and that Plaintiff filed no further grievances regarding access to the SDCJ recreation yard.

As long as prisoner waits a reasonable amount of time for a response to a grievance, the failure of the prison to respond in a timely fashion sufficiently exhausts the prisoner's administrative remedies and renders further relief at the administrative level unavailable. *See e.g.*, *Rupe v. Beard*, No. CV-08-2454-EFS (PC), 2013 WL 2458398, at *16 (E.D. Cal. June 6, 2013) ("An inmate who files suit a mere one or two days after an appeal-response

deadline has passed has probably not demonstrated that administrative remedies are effectively unavailable, as the Ninth Circuit requires…. But, on the other hand, after the inmate has waited a reasonable period of time and has received no response or notice of delay, the failure by prison officials to abide by inmate-grievance regulations must excuse the inmate's failure to exhaust; otherwise, prison officials could indefinitely delay inmates from pursuing legal remedies simply by ignoring all inmate appeals.") (citation omitted); *Cotton v. Cate*, No. C 13-3744 WHA (PR), 2015 WL 1246114, at *3 (N.D. Cal. Mar. 17, 2015) ("Defendant does not cite any authority that a California inmate who has received no response at the first level of review may nevertheless proceed to the second and third levels of review, or any authority that the PLRA requires inmates generally to proceed to higher levels of review when prison officials do not respond at the lower levels. Absent such authority, defendant has not shown that the second and third levels of review were available to plaintiff, and therefore required to properly exhaust under the PLRA, after plaintiff did not receive a response to his appeal at the first level of review."); *Courson v. Cochran*, No. 08-CV-0871 JAH(LSP), 2009 WL 10725678, at *6 (S.D. Cal. Feb. 19, 2009), report and recommendation adopted, No. 08cv0871 JAH (LSP), 2009 WL 10725718 (S.D. Cal. June 24, 2009) ("Prison authorities cannot have it both ways - they cannot obstruct an inmate's pursuit of administrative remedies exhaustion by failing to comply with statutory procedure on the one hand, and then claim that the inmate did not properly exhaust these remedies on the other.") (citation omitted); *Exmundo v. Scribner*, No. 1:06-cv-00205-AWI-GBC (PC), 2011 WL 3322608, at *1 (E.D. Cal. Aug. 2, 2011) ("[T]here is authority for the proposition that if a prisoner submitted a timely inmate appeal in compliance with the governing regulations and his appeal received no response, or received a response only after an extraordinary delay, the prisoner has satisfied the exhaustion requirement.") (citations omitted).

There is no evidence in the record that Defendant responded to Plaintiff's March 6, 2017 grievance in a timely manner. The Court finds that Defendant has not carried its burden to prove "that the prisoner did not exhaust" the available administrative remedy

regarding access to the SDCJ recreation yard. *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172). Plaintiff's grievance covering the time period between February 27, 2017 and March 6, 2017 "has satisfied the exhaustion requirement." *Exmundo*, 2011 WL 3322608, at *1.

**C. Cruel and Unusual Punishment Regarding Outdoor Exercise**

Defendant objects to the Report and Recommendation because Plaintiff has failed to present evidence that it was blatant or obvious to jail officials that Plaintiff was not receiving access to the SDCJ recreation yard. Defendant asserts that the evidence shows that the deputies were subjectively unaware of any serious risk resulting from Plaintiff not receiving access to the SDCJ recreation yard. Defendant contends that Plaintiff's municipal liability claim fails as a matter of law because there is no genuine dispute of material fact as to Defendant's underlying claims regarding access to the SDCJ recreation yard.

"[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious ….'" *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under this objective requirement, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities ….'" *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Under the subjective requirement, "a prison official must have a 'sufficiently culpable state of mind.'" *Id*. (quoting *Wilson*, 501 U.S. at 297). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety …." *Id*. (quoting *Wilson*, 501 U.S. at 297). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. at 842 (citation omitted). "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from

liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

> Plaintiff states in a sworn declaration that
>
> On March 6th, 2017 I filed a[] grievance for denial of out of cell exercise and denial of outdoor exercise. It was accepted by Deputy M.R. Meza who signed it and gave me my carbon copy proving I submitted the grievance. I received no response to this grievance.
>
> As a result of being denied outdoor exercise for five months and all out-of-cell exercise for three months, I experienced headaches, breathing difficulties, muscle and ligament tightening, cardiovascular regression, weight gain, depression and other physical and psychological injuries.
>
> I never reported my injuries to medical because there was nothing medical could do about it….
>
> In late March or early April, 2017 I wrote a … letter to Sheriff Gore complaining of the denial of outdoor exercise and all out-of-cell exercise. I also complained of the continued refusal by his staff to respond to grievances I filed on these issues….

Pl.'s Decl. ¶¶ 19-20, 22, 24 ECF No. 147 at 52-53. In this case, there is no evidence in the record that SDCJ officials were aware of "a substantial risk of serious harm" to Plaintiff's health or safety. *Farmer*, 511 U.S. at 837. Plaintiff stated that he "never reported" his injuries to the SDCJ medical staff. Pl.'s Decl. ¶ 22, ECF No. 147 at 53. Plaintiff's only communication with SDCJ officials regarding access to the SDCJ recreation yard was through his March 6, 2017 grievance. Plaintiff fails to present evidence that his March 6, 2017 grievance made SDCJ officials aware of "a substantial risk of serious harm" to Plaintiff's health or safety. *Farmer*, 511 U.S. at 837. The Court concludes that Plaintiff has failed to meet the subjective requirement of his Eighth Amendment claim. *See Farmer*, 511 U.S. at 834. The Court grants summary judgment in favor of Defendant and against Plaintiff on Plaintiff's Eighth Amendment claim regarding Plaintiff's access to the SDCJ recreation yard.

### D. Plaintiff's Monell Claims

The Supreme Court has stated that "the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). The Court concludes that Defendant did not "cause[] a constitutional tort" by placing Plaintiff in administrative segregation. *Id*. The Court concludes that Defendant did not "cause[] a constitutional tort" by denying Plaintiff access to the GBDF recreation yard or to the SDCJ recreation yard. *Id*. Plaintiff's municipal civil rights claim against the County fail as a matter of law. *See e.g.*, *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) ("Here, the municipal defendants cannot be held liable because no constitutional violation occurred.").

### CONCLUSION

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 154) is ADOPTED in part and NOT ADOPTED in part. Plaintiff's Objections (ECF Nos. 157, 162) are OVERRULED. Defendant's Objection (ECF No. 158) is SUSTAINED. The Motion for Summary Judgment filed by Defendant County of San Diego (ECF No. 137) is GRANTED. IT IS FURTHER ORDERED that the Renewed Ex Parte Motion for a Copy filed by Plaintiff (ECF No. 160) is DENIED as moot. The Clerk of the Court shall enter judgment in favor of Defendant County of San Diego and against Plaintiff Thomas Goolsby. The Clerk of the Court shall close this case.

Dated: April 6, 2020

Hon. William Q. Hayes
United States District Court